\*WILLIAM HOGE ET AL.

v.

THE FIRST NATIONAL BANK.

OBTAINING MONEY UNDER FALSE PRETENSES—INDORSEMENT OF DRAFT. —Where a William Robins, living temporarily at Chebanse, entered into negotiations for a loan and produced an abstract of title in which the property was shown to belong to William Robins (but this William Robins was another person living at Lockport and of whose existence the party making the loan did not know), and the money was loaned on such representations, and Robins executed the note and mortgage which formed the consideration for the draft in question, which Robins indorsed and which upon presentation the bank paid. *Held*, that Robins of Chebanse did not commit forgery but obtained money under false pretenses, and as the draft was paid upon the indorsement of the precise person who was in the conception and present to the mind of the drawer and sender of it, there is no question of negligence on the part of the defendant bank.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed April 28, 1886.

In June, 1875, Edward Sanford, a lawyer, and engaged in negotiating loans on real estate at Morris, Grundy county, Illinois, received a letter from Chebanse, Iroquois county, Illinois, applying for a loan of $1,500, on eighty acres of land situated in Will county, about four miles from Lockport. The letter was in the handwriting of J. P. H. Trescott and on one of his letter-heads, and was signed "William Robins." With the letter came a loan application made out on one of

---

\* The case of Grundy National Bank, use, etc., v. The First National Bank, involves the same questions as the above and is affirmed for same reason.

Sanford's blanks, which were distributed to different offices in the county, and also an abstract of title.

The application was filled out in the handwriting of Trescott, who was well known to Sanford, giving a description of the land and stating that it was in possession of John Griffin, was cultivated, that the applicant had a perfect title, that the land was worth 40 dollars per acre and improvements worth $800 ; that the applicant was worth over all indebtedness $4,000.

The application which is in the form of an affidavit is signed William $\underset{\text{mark}}{\overset{\text{his}}{\bowtie}}$ Robins, and is sworn to before J. P. H. Trescott, notary public.

The abstract showed a good title to the land in "William Robins, Jr."

Sanford sent a copy of the application to A. J. Mathewson, a surveyor, who lived at Lockport, and had an office in Joliet, asking him if the facts stated in the application were true, and Mathewson replied that they were true; that there was no one living on the land, but that it was cultivated by Griffin, a tenant.

Sanford applied to Hoge for the loan, and he consented to make it, and thereupon an application to Hoge for the loan and a note and mortgage were drawn up by Sanford and sent to William Robins, care of Trescott, at Chebanse, to be executed.

The papers were returned executed, and after the abstract had been brought down so as to show the mortgage recorded, Sanford having been requested by Robins to send money by draft, obtained a draft drawn by the Grundy County National Bank on the First National Bank of Chicago for $1,438, payable to the order of William Robins, and sent the same to William Robins, addressed in the same manner as the previous letters to him. All the business was done by correspondence. Sanford saw neither Robins nor Trescott in the matter, and Hoge had no communciation with them about the loan, he leaving the entire matter to be transacted by Sanford.

The draft was cashed by the cashier of the Commercial

Bank of Kankakee, on the indorsement of William Robins, who must have been, as the cashier swears, identified or known to him as William Robins, or the money would not have been paid.   The Kankakee bank sent the draft to its Chicago correspondent, who presented it to the defendant, the First National Bank, by whom it was paid.   Interest was paid on the note given to Hoge for some two years, when default was made.   After some delay, the interest remaining unpaid, several letters were written by Sanford at Hoge's request, but no answer being received, a messenger was sent to the land, when it was found that though the land was owned by a man named William Robins, he had never negotiated for the loan, nor executed the note or mortgage, nor received the draft or money.   He resided in the town of Lockport, not far from the land, spells his name "Robbins" and can write.   He brought suit against Hoge and had the mortgage removed from his land.

One Theodore Babcock, who kept a hotel at Chebanse, had as a guest at his hotel, for a few weeks in the summer of 1875, a man who went by the name of William Robins.

Trescott, who did the writing, knew nothing about the man for whom he did it, and knew him as William Robins only, as he represented himself to him by that name.   The correspondence was carried on and the transaction of the loan completed between June 16th and July 9th, 1875.   In December, 1878, it was discovered by Hoge and Sanford that they had been defrauded; that the Chebanse Robins, if any such Robins there was, was not the owner of the Lockport land.

In March, 1879, demand was made on the First National Bank for the amount of the draft, on the ground that it had been paid on a forged indorsement.

Suit was brought and the court below entered judgment for the defendant, and the case comes here by appeal.

Mr. JULIUS STARRETT, for appellants ; that the indorsement of the payee's name on the draft was a forgery, cited State v. Lane, 80 N. C. 407; Cochran v. Atchison, 27 Kas. 728; Stevens v. Stebbins, 3 Scam. 25 ; Elberson v. Richards, 13

Vroom (N. J.), 69; Mead v. Young, 4 Tenn. Reports, 28; Barfield v. State, 29 Ga. 127; People v. Cowen, 6 Cowen, 72; Rogers v. Ware, 2 Neb. 29; Rex v. Dunn, 1 Leach, 57; People v. Sharp, 53 Mich. 523; Palm v. Watt, 7 Hun (N. Y.), 317; Kohn v. Watkins, 26 Kas. 691.

Mr. ORVILLE PECKHAM, for appellee.

MORAN, J. The contention of the appellant is, that the indorsement of the name William Robins on the draft, was a forgery, and a large number of cases are cited to us by counsel, many of them similar, in some of their features, to this case, in which courts have held indorsements to be forgeries. Of those cited, Dodge v. The National Exchange Bank, 30 Ohio St. 1; Palm v. Walt, 7 Hun, 317; Kohn v. Watkins, 2 Kansas, 691, and the Agricultural Investment Company v. The Federal Bank, 45 Upper Canada, Queen's Bench, 214, seem to be nearest in support of counsel's contention. In the Ohio case one Frederick B. Dodge was the holder of a certificate of indebtedness, which he indorsed in blank and inclosed in a letter and sent by mail. The letter was stolen from the mail and the certificate presented to the paymaster, by one who falsely represented himself to be the Frederick B. Dodge. The paymaster gave a check payable to Frederick B. Dodge, and took up the certificate. The personator of Dodge indorsed the check with the name of Dodge and it was paid.

The court held the check was payable to the owner of the certificate, was made to his order and not paid to him, but to a stranger who forged the indorsement of his name.

The case in 7 Hun, was that one Raleigh assumed the name of John M. Gillespie, while temporarily staying in Texas, and under such name wrote letters to the mother of the true John M. Gillespie, representing himself to be that person, who had been unheard of for several years, and asking assistance to enable him to return. The mother inclosed a check payable to the order of John M. Gillespie, San Saba, Texas. The letter was taken out of the post-office by Raleigh, and he indorsed the check with the name of John M. Gillespie, and was paid

the money on it by one Ward. The indorsement was held a forgery, and Ward could not recover on the check.

In 26 Kan. 691, one McLain represented that one Becker, a person *in esse* and a former resident of the county, desired a loan on premises purporting to be situated in the county, and forged the name of Becker to an application. The loan was accepted, and a mortgage and note sent McLain, to be executed by Becker, accompanied by a draft payable to Becker for the amount. McLain forged the name of Becker on the draft, and indorsed his own name thereon, and obtained the money from an innocent party.

Held, the name Becker was forged, and the purchaser of the draft on such indorsement could not recover.

The case in 45 Upper Canada was that one Stobbs represented to the agent of a loaning company that two brothers named Bee wanted a loan. The agent filled a blank application, upon Stobbs' statements, and gave it to him to have it signed. Stobbs returned it, signed John T. Bee and Isaac Bee, P. O. Wheatley, and containing a description of their property. The loan was taken and checks sent payable to Isaac Bee and John T. Bee, which were obtained by Stobbs, and he indorsed them with the names of the payees and also with his own, and obtained the money. The Bee brothers knew nothing whatever of the transaction.

The indorsements were held forgeries, and the holder could not recover against the loan company.

In all these cases, it will be readily seen, the real person to whom the drafts or checks were made payable was present to the mind of the drawer when the draft or check was made. The making of the drafts may have been induced by fraud or false statements, their mailing or delivering induced by some trick, but the real person to whom the money was to be paid was always in the intentions of the drawer, and some one not that person, by some trick or fraud, got possession and improperly forged the name of the real person who was in the mind of the drawer.

These cases do not rule the one under consideration, nor do any of the other cases cited by counsel. Each case must be

governed by its own facts. The record shows that there was, at the time the fraud in this case was perpetrated, a man at Chebanse, who was known in that place, so far as he was known at all, by the name of William Robins. There is nothing to show that such was not his true name, no evidence that he was ever known anywhere by any other name. He, by correspondence, made himself known to Sanford and Hoge, by that name, giving his address as at Chebanse, and throughout, the negotiation was carried on with the man at Chebanse, known as William Robins. Neither Sanford or Hoge, so far as appears, ever heard of William Robbins of Lockport, and he was at no time within their mental cognizance. William Robins of Chebanse, represented that he himself wanted to make the loan, that he was worth four thousand dollars, and that he had the title to the land described, and produced an abstract which showed title to the land in William Robins. He, in the name by which he was known to Sanford and Hoge executed the note and mortgage which formed the consideration for the draft, and there is not the slightest doubt that they intended the draft should be paid to the identical individual with whom they had corresponded, and who executed the note and mortgage for which it was given. He committed a crime, it is true, but his crime was not forgery, but obtaining money by false pretenses. He represented that he owned the land, and the production of the abstract aided the pretense that he had a title to it, and led Sanford and Hoge to rely upon his statement and deal with him in the belief that he had the title to the property. Owing to the identity of name, the true abstract was used to lend support to the false pretense, but the perpetrator of the fraud never pretended to be any other than the person living for the time at Chebanse, and known as William Robins.

The draft then was paid upon the indorsement of the precise person who was in the conception and present to the mind of the drawer and sender of it. Robertson v. Coleman, 4 N. E. Reporter, 619.

There is, under the circumstances of this case, no question of negligence, on the part of the defendant bank, to be considered.

The case presents a question of fact only. The draft was paid to the exact party to whom it was made payable, and the judgment of the court below must be affirmed.

Judgment affirmed.