Ex parte GEISSLER.

(District Court, S. D. New York. April 4, 1912.)

FORGERY (§ 6*)—ELEMENTS—BLANK CHECK—FILLING AMOUNT.
    Petitioner and Q. having jointly engaged in speculative transactions, pursuant to which they were jointly indebted for over 15,000 marks, petitioner produced a check, signed by him in his firm name, the amount and date being left blank, and asked Q. to indorse it in blank, telling him that he was going to see the creditor and arrange the matter with him, that perhaps he would not need to fill the check at all, and in any case would not fill it out for more than 3,000 or 4,000 marks. Q. ultimately indorsed the check, relying on this promise, after which petitioner filled it up for 15,287 marks 65 pfennigs, dating the check some months in advance, and delivering it to the creditor. Held that, as between petitioner and Q., the filling up of the check for an amount larger than that specified in the agreement, but less than the amount of their joint indebtedness, was a mere breach of confidence reposed by one partner in another, and did not constitute forgery.
    [Ed. Note.—For other cases, see Forgery, Cent. Dig. § 7; Dec. Dig. § 6.*]

Petition by Walter Konrad Geissler for a writ of habeas corpus and certiorari to obtain his release from arrest in foreign extradition proceedings. Writs granted, and petitioner discharged.

Roger Foster, for petitioner.
Carl L. Schurz, for demanding government.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HOLT, District Judge. These are writs of habeas corpus and certiorari to determine the validity of the detention of Walter Konrad Geissler under an order of a United States commissioner for his extradition. Geissler was arrested as a fugitive from justice upon a complaint made by the German consul at New York, charging that he had been guilty in Germany of the crime of forgery. The evidence substantially consists of depositions taken in Germany in a proceeding instituted against Geissler upon a charge of fraudulent bankruptcy. In the course of the evidence taken in that proceeding, testimony was given which it is claimed supports a charge against him of forgery. The evidence submitted is not very clear in all respects, but the substantial facts are these:.

Geissler and a man named Quaas, both of whom resided at Meerane, Germany, were jointly engaged in what is described in the evidence as "operations in futures." The transactions were to be managed through the firm of P. & H. Meyer, in Chemnitz. The contracts were made out in the name of Quaas, but Geissler transacted the business with P. & H. Meyer. It was agreed that Geissler and Quaas should jointly bear the profit and loss. In November, 1910, Geissler told Quaas that P. & H. Meyer were pressing for margins on account of losses which had occurred by reason of the operations in futures. Geissler produced a check signed by him in his firm name of A. V. Penzig Nachfolger, drawn on a bank in Leipsig. The amount of the check and the date were then blank. Geissler asked Quaas to indorse it in blank. He told Quaas that he was going to see Meyer at Chemnitz and arrange the matter with him; that perhaps he would not need the check at all; that in any case he would not fill it out for more than 3,000 or 4,000 marks. Quaas at first objected to signing it, but ultimately did sign it, in reliance on Geissler's promise that it should not be filled out for more than 4,000 marks. Geissler subsequently filled it out for 15,287 marks 65 pfennigs, and inserted as the date February 28, 1911. On the 28th of November, 1910, three months before the date of the check, he delivered it to P. & H. Meyer.

Quaas testified that he heard later from Meyer that Geissler had given Meyer the check in question in settlement of his own losses in another business. This evidence, in my opinion, is inadmissible as hearsay. Wend, a member of the firm of P. & H. Meyer, testifies that Geissler gave the check to his firm as security; that Geissler owed P. & H. Meyer 50,000 marks "out of this business in futures"; that P. & H. Meyer had requested Geissler to give them security at the time they took the check; and that at that time he owed them about 25,000 marks. The evidence is not very clear whether this check was given to P. & H. Meyer on account of the operations in futures of Geissler alone, or of Geissler and Quaas; but my impression from the evidence is that it was given to secure the debt of Geissler and Quaas. If the demanding government relies on the claim that the check was not used for the operations for which Quaas was liable, it should have clearly proved it. The check was presented about March 1st to Quaas, who at first refused to pay it.

Quaas testifies that a few days afterwards he saw Geissler, and that Geissler said "that Meyer would be quieted if he gave him notes for the amount"; that Geissler "thereupon laid three notes, together for over 15,000 marks, before me, and asked me to indorse these notes, promising at the same time faithfully that he would take care to have them duly paid when they came due. This, however, did not happen." It is stated in the brief of the counsel for Geissler that Quaas signed these notes, and this statement is not anywhere denied in the case, and I understand this evidence to admit that the notes were signed by Quaas, and that what did not happen was the promised payment of them by Geissler when they came due.

The charge in this case is forgery. There is no charge of uttering a forged instrument. The forgery is alleged to have consisted in Geissler's writing in the check, after Quaas had indorsed it, the sum of 15,287 marks 65 pfennigs, instead of a sum not exceeding 4,000 marks. There is no claim that Geissler did not have power to sign the signature of his firm to the check, and that Quaas did not indorse the check. Nor is there any charge of any alteration in the check. The charge is that a larger amount was inserted in the check than Quaas had authorized Geissler to insert. It is asserted that this act was forgery, in reliance on a line of cases holding that, when a person has given a blank check to another and authorized him to fill in a certain amount, it is forgery for that other person to fill in a larger amount. People v. Dickie, 62 Hun (N. Y.) 400, 17 N. Y. Supp. 51; Rex v. Hart, 7 Car. & P. 652; Regina v. Wilson, 2 Car. & K. 527. Most of the cases are cases where an employer has authorized a clerk to fill in a certain amount for a particular purpose, and the clerk has filled in a larger amount and appropriated either the proceeds, or the surplus of proceeds over the particular purpose intended, to his own use. In each of these cases the person who inserted the amount larger than the amount authorized was a mere agent, having no original authority whatever to do anything with the check or note filled in. But in this case Geissler and Quaas were speculating on a joint account. They had agreed to share profits and losses equally. For whatever amount was due to P. & H. Meyer for losses, or as margins, they were jointly and severally liable. Their relation as between each other in regard to these transactions was substantially that of partners. Quaas was liable equally with Geissler for whatever amount was due to P. & H. Meyer by reason of the transactions in futures. Geissler, therefore, did not, in inserting a larger amount than Quaas had authorized him to insert, impose any liability upon Quaas which did not exist before. Quaas had authorized Geissler to fill in the amount in his discretion, simply limiting it to 4,000 marks. Geissler had a perfect right to insert any amount he saw fit, so far as the maker of the check was concerned, and I cannot see that his action in inserting a larger amount than Quaas had authorized constituted forgery. It was a dishonest and fraudulent transaction so far as Quaas was concerned, but every fraudulent addition to a paper is not necessarily forgery. People v. Underhill, 142 N. Y. 38, 36 N. E. 1049; Commonwealth v. Sankey, 22 Pa. 390, 60 Am. Dec. 91.

I cannot see that the insertion of the 15,287 marks amounted to anything more than a breach of confidence reposed by one partner in another. One of the elements of forgery, according to all the definitions, is that a writing should not only be made or altered with fraudulent intent, but it must have the effect of imposing a liability or creating an obligation upon some other person. In this case it simply made Quaas liable on a check for an amount which he previously owed.

My conclusion is that the petitioner should be discharged.