[No. 10907.   Department Two.   April 15, 1913.]

JOHN LEE CLARKE, INCORPORATED, *Respondent*, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, *Appellant*.[1]

INSURANCE—INDEMNITY INSURANCE—LOSSES—"LARCENY." An indemnity bond insuring against loss by any act, larceny or embezzlement of one under contract to sell goods on consignment and remit often enough so that the amount due on consigned account shall never exceed $100, does not cover indebtedness due on the account, nor protect against losses by reason of poor business judgment whereby sums due on consigned account were spent in attempting to put the business on a paying basis for the mutual benefit of the parties, nothing having been misappropriated to the use of the employee.

[1]Reported in 131 Pac. 468.

Appeal from a judgment of the superior court for King county, Everett Smith, J., entered July 10, 1912, upon findings in favor of the plaintiff, in an action on contract. Reversed.

*William W. Wilshire*, for appellant.

*John P. Hartman*, for respondent.

MORRIS, J.—Appeal from a judgment upon a fidelity bond, protecting respondent against pecuniary loss "by any act of larceny or embezzlement" of Bessie Luella Churchill, as an employee of respondent. Many issues are raised by the briefs as to liability or nonliability because of certain issues incorporated into the trial below and submitted here, but we find no reason for determining these questions; since there is one conclusion that we reach from the record, that no liability was ever established upon the bond, in that the record fails to establish any larceny or embezzlement on the part of the one whose honesty the bond insured.

Respondent is a New Mexico corporation, dealing in Indian curios, blankets, rugs, and other like merchandise. Prior to May 1, 1910, it had a stock of merchandise in a store on Third avenue, Seattle, valued at $2,500. About that time, it entered into an arrangement with Miss Churchill, consigning these goods to her at 25 per cent above the invoice, and agreeing to furnish other merchandise of the same character as desired upon the same terms, Miss Churchill to pay all expenses of sale, remit for all goods consigned and sold, "often enough so that the amount due" respondent upon such consigned account should never exceed $100; the balance arising from the sale of such merchandise to be retained by Miss Churchill as commissions. There is much controversy as to the appellant's knowledge of this contract, which seems to have been entered into after the bond was written; and the first one not being satisfactory to respondent, it prepared a second one and forwarded it to Miss Churchill for her signature and delivery to appellant, some four months after the bond

was written. Whatever may have been the contract between respondent and Miss Churchill, the liability of appellant is to be determined by its contract, assuming that it knew all about these changed contracts and consented thereto, its liability was still in the language of its bond against pecuniary loss to respondent by the larceny or embezzlement of Miss Churchill.

Sometime in July, Miss Churchill became dissatisfied with business conditions on Third avenue and sought a location on Second avenue. She succeeded in leasing one-half of a store at $250 a month. At this time she was indebted to respondent in about $250. She wrote, informing respondent of her contemplated move and saying, unless she received notice to the contrary, she would spend that money in making contemplated changes in the new store. On July 14, she wrote that, if respondent could let her have $350, she could "move and get settled with what she had," and pay for contemplated changes and repairs. On July 8, respondent wrote that it thought her judgment was good as to the new location, but it did not wish at that time to assume any additional financial burdens by itself taking up the proposition. On July 29, respondent writes, congratulating her on her "nerve" in moving to the new location with its added burden of expense. These letters are referred to as showing that respondent had full knowledge of the move to Second avenue, and consented thereto, so long as it was not asked to assume any burdens of the new lease. This move was not a success, and the business began to lose money. The added rent, the amount paid out in changing the new location to meet the demands of the business, put it on the rock, and it virtually failed. On August 18, respondent writes Miss Churchill:

"I feel that you have been very careful in your expenditures as shown by the reports we have on file, and I trust you have been just as careful and have used the very best judgment in these new arrangements you are making."

In this letter Mr. Clarke says he did not receive her letter in regard to the $250, and hence had not answered. On September 1, seeing she could not make it in the new location, a second move was made to a room in the Butler Hotel. Business seemed to improve in this new location, and during September a remittance of $90 was made to respondent. Respondent, however, became dissatisfied, and sent a representative to close up the business. This representative, with representatives of the appellant, took an inventory of the merchandise Miss Churchill had received from respondent, gave her credit for payments and other items they thought her entitled to, and found a balance due respondent of $1,454.47, which amount was reduced $12 by the lower court and interest added, making the judgment $1,500.17.

It is not disputed that the rock that wrecked this business was the move to Second avenue, with its enlarged rental and amount expended in making store changes. Miss Churchill may have used poor business judgment in making this move, but it is another thing to say that, because she lost money in attempting to put the business on a better paying basis, she was guilty of larceny or embezzlement. She appropriated the money to what she deemed to be the demands of the business for the mutual benefit of herself and respondent. She did not misappropriate it to her own use, or make such a conversion of it as to subject her to a charge of larceny. Larceny is to take the money or property of another, with criminal intent to deprive the true owner of its use and benefit. There is nothing of that kind disclosed in this record, and this bond covers nothing else. It does not cover the indebtedness of Miss Churchill to respondent, or the balance due it on its consigned account. It protects respondent against the dishonesty of Miss Churchill, but not against her lack of business acumen. Nor does it guarantee the success of her adventure. The lower court seemed impressed with the view that the appellant was an insurer that Miss Churchill would

pay respondent for all goods at its invoice price to her. This is not the obligation of the bond, and while these compensated sureties have been held strictly to their contracts and not permitted to escape liability because of some technical breach of the bond that did not operate to their prejudice, still, like every other litigant, they have a right to stand upon the condition of their liability as fixed in the bond. That is the contract, and the only one that can be enforced; and when, as here, we find its condition has not been broken, we cannot break it in order to compensate respondent for one kind of loss it has sustained, because it has paid a premium to appellant to compensate it for another kind of loss it might sustain, any more than we would permit a recovery under a policy covering a dwelling when the insured had lost his barn by fire. Larceny and embezzlement are terms well defined in law and any obligation insuring against the commission of these offenses cannot be extended to cover pecuniary losses occurring from other causes. The bond as written was a fidelity risk, insuring the honesty of Miss Churchill, and not a financial risk guaranteeing her ability to pay her indebtedness as assumed or contemplated as a liability under her contract with respondent.

The judgment is reversed, and remanded with instructions to dismiss.

CROW, C. J., FULLERTON, ELLIS, and MAIN, JJ., concur.