[No. 19600.   Department One.   August 24, 1926.]

PARKER LUMBER AND BOX COMPANY, *Respondent,* v. AETNA CASUALTY AND SURETY COMPANY, *Appellant.*[1]

[1] GUARANTY (9)—CONSTRUCTION—SCOPE AND EXTENT OF LIABILITY. A previous conviction of the agent is not a prerequisite to an action upon an agent's guaranty bond to protect the principal from pecuniary loss by reason of any fraudulent or dishonest act of the employee in connection with his duties amounting to embezzlement or larceny, where the agent breached his contract by selling goods to himself, making collections without remitting, and fraudulently used the principal's money for his individual purposes.

[2] SAME (9). In an action on such a bond, the surety is not liable for the amount of commissions which the agent was entitled to and did retain pursuant to his contract of employment.

[3] EVIDENCE (165)—PAROL AFFECTING WRITINGS—EVIDENCE FOR PURPOSE OTHER THAN VARYING TERMS. A written contract providing that a manager and sales agent was subject to the control and direction of the employer's board of directors, is not varied by parol evidence that it was shortly thereafter orally agreed that certain orders should be taken and shipped in the agent's name; as it was within the power of direction, and merely explanatory of the contract.

[4] APPEAL (451)—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE—CASES TRIED WITHOUT A JURY. In an action tried to the court, error in the admission of improper testimony is harmless where the findings were sustained by other evidence.

Appeal from a judgment of the superior court for King county, Hon. C. E. Claypool, judge *pro tempore,*

[1]Reported in 248 Pac. 795.

upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*J. Speed Smith* and *Henry Elliott, Jr.*, for appellant.
*Bausman, Oldham & Eggerman,* for respondent.

Bridges, J.—This is an action by an employer to recover against the surety on an employee's fidelity bond. The case was tried by the court, which entered judgment for the plaintiff in the sum of $17,424.03, together with interest thereon. The surety company has appealed.

The respondent owned a lumber mill, located at Everett, and manufactured box shooks. The principal place of business was at Riverside, California, where most of the stockholders and officers lived. One C. M. Post, at the same time, resided in the city of Seattle and was doing business under the name of C. M. Post Box and Lumber Company. His business was in the nature of an agency or a middleman who bought and sold box shooks. He had been in this business for some years. In 1922, while he was in California, he got in touch with the officers of the respondent, and after considerable preliminary discussion, was employed as manager of the Everett mill and as agent for the sale of the products of that plant. A written contract was entered into, by the terms of which Post was for five years, beginning March 1, 1922, to act

". . . as manager of its [Everett mill] business of manufacturing and producing lumber, box shooks, etc., and as its selling agent in selling or otherwise disposing of all of such lumber."

The contract further provided that, as manager, Post should have the power to supervise and direct the operations of the mill, subject always, however, to the

control and direction of the board of directors of the respondent. It also gave him power—

"as such selling agent, to sell, . . . (but subject to the control and direction of said board of directors) all the products manufactured or produced by said company . . .; provided, however, that as such agent he shall have power to sell, or agree to sell, without previous authority therefor, any such products, (1) to regular dealers in, or consumers of such products, in good business standing and repute; (2) in amounts not exceeding the ability of the company, operating said mill, as usually operated, to produce and deliver, without default, the same and all other products of said mill previously sold, or agreed to be sold and delivered by the company; and (3) at prices therefor that shall yield to the company a net profit thereon of not less than ten per cent. of the cost of producing and delivering the same."

It was further provided that Post should, at his own cost and expense, maintain a good and sufficient selling organization in the city of Seattle for the sale of the products of the mill. For his services he was to be paid

". . . five per cent. of the selling price of all said products sold by said party of the second part (Post), out of and from, and proportionately, when and as the same shall be paid to and received by the company."

Immediately after the contract as written was executed, the officers of the respondent instructed Post to sell and ship all products in its name. It appeared, however, that Post had previously sold to various concerns throughout the country certain box shooks which were to be shipped at intervals during the year following the execution of the contract, and that these sales were at a price somewhat higher than the prevailing price at the time of the execution of the contract. It was orally agreed that the respondent should have the benefit of these orders and that, inasmuch as the sales had been made directly by Post, those orders, called

"old business," should be shipped in Post's name, but that the collections should belong to the respondent and should be remitted by Post to it as collected. All new orders were to be taken in the name of respondent.

At once, after entering into the contract, Post assumed his duties under the contract and so continued for some seven or eight months. The appellant gave the bond sued upon, in the sum of $50,000. It agreed to protect respondent against

". . . such pecuniary loss of money, funds or other personal property belonging to the obligee (the respondent), as shall be sustained by the obligee by reason of any fraudulent or dishonest act or acts of the employee in connection with the duties of said position, amounting to embezzlement or larceny."

The bookkeeping for the mill operations was done at Riverside. Under directions, Post was to make daily reports to the officers at Riverside, showing all purchases of logs, the amount of products manufactured, all sales and persons to whom the same were made, and all collections. From these daily reports, the books were made up. One of the accounts was that of C. M. Post Box and Lumber Company. That account, as shown by the books, indicated that certain of the products of the mill were, from time to time, being charged to the C. M. Post Box and Lumber Company and from time to time credits to that account were given. When Post was finally discharged, the account showed that he was indebted to the respondent in the sum of more than twelve thousand dollars.

The testimony shows that Post shipped out from the mill some of its products on the so-called old orders (that is, orders that Post had obtained prior to the time he became an employee of the respondent) and that these shipments were, at least for the most part, billed in the name of the C. M. Post Box and Lumber Com-

pany, and collections were made by him, many of which he failed to remit to the respondent, but converted to his own use. It appears also that, in violation of his contract and instructions, he sold to himself, or his agency, a certain amount of box shooks on so-called new orders and that, in making collections, he used considerable sums for his own purposes, thereby failing to remit to respondent.

In September or October following his appointment as manager, it was discovered that Post had breached his trust in the manner above indicated, and upon being accused therewith, admitted that he had done wrong and that he had converted respondent's money to his own uses, and begged to be permitted to make repayment, which, however, he never did.

It is asserted in appellant's brief, and not denied in the respondent's brief, that the judgment is made up of the following items: (1) Amounts charged against the account of the C. M. Post Box and Lumber Company, collections made but not remitted to respondent, the amounts in this item appearing to be somewhat in excess of $12,000; (2) certain deductions for commissions on items billed to the C. M. Post Box and Lumber Company and remitted to the respondent; and (3) $1,911.68, being the amount of three checks drawn by Post to the order of the C. M. Post Box and Lumber Company, as commissions on goods invoiced directly from the respondent to the customer, remittances of collections having been made.

At this point, it may be well to briefly discuss the bond. It will be remembered that it was to make good and reimburse the respondent

". . . for such pecuniary loss of money, funds, or other personal property belonging to the obligee, as shall be sustained by the obligee by reason of any fraudulent or dishonest act or acts of the employee in

connection with the duties of said position, amounting
to embezzlement or larceny.''

[1] It has generally been held, and we think cor-
rectly, that, in a bond such as we have here, the guar-
anty is against dishonesty or fraud of the employee,
whether such acts would render him liable to indict-
ment for embezzlement or larceny or not; that the par-
ties, when contracting, were not interested in the en-
forcement of the criminal laws, and that, in order to
recover on the bond, it is not necessary that there shall
have been a previous conviction of the employee or that
the testimony shall be sufficient to prove a technical em-
bezzlement or larceny. Some of the cases so holding
are these: *The City Trust, Safe Deposit and Surety
Co. v. Lee,* 204 Ill. 69, 68 N. E. 485; *Green v. United
States Fidelity & Guaranty Co.,* 135 Tenn. 117, 185 S.
W. 726; *Delaware State Bank v. Colton,* 102 Kans. 365,
170 Pac. 992; *Vilm Milling Co. v. Kansas Casualty &
Surety Co.,* 104 Kans. 790, 180 Pac. 782; *Rankin v.
United States Fidelity & Guaranty Co.,* 86 Ohio 267,
99 N. E. 314; *Champion Ice Mfg. & Cold Storage Co. v.
American Bonding & Trust Co.,* 115 Ky. 863, 75 S. W.
197; *American Bonding & Trust Co. of Baltimore City
v. Milwaukee Harvester Co.,* 91 Md. 733, 48 Atl. 72.

It has also been held that such bonds are liable for
loss resulting from fraudulent or dishonest acts of the
employee, but are not liable for mere debts or losses
resulting from mismanagement or the use of poor busi-
ness judgment by the employee. *Monongahela Coal
Co. v. Fidelity & Deposit Co. of Maryland,* 94 Fed. 732;
*Williams v. United States Fidelity & Guaranty Co.,*
105 Md. 490, 66 Atl. 495.

Appellant's chief argument is that there is no li-
ability here, because the relationship between Post and
the respondent was nothing but that of debtor and

creditor. This argument, for the most part, is based upon the fact that the books kept by respondent at Riverside contained an account with Post which showed various charges against him or the company name under which he did business, and also various credits given for payments made. In other words, it is stated that, at all times, respondent knew that Post was shipping out goods in his own name or that of his company, having the same charged to his account, and was making collections and from time to time remitting. If this account meant all that would appear upon its face, there would be some merit to the argument; but it must be remembered that it was agreed between Post and respondent that the old orders, which Post had obtained prior to entering the employment of the respondent, were to be shipped and he was to make collections in his own name, but that such orders and accounts should, in fact, belong to the respondent and all moneys collected should be at once remitted. This arrangement made it necessary for the books of the respondent to show an account with the C. M. Post Box and Lumber Company. But there was nothing in the account or in the daily reports to indicate that Post was collecting money from these old accounts and fraudulently converting it to his own use; nor was there anything in the account to indicate that Post was breaching his contract and instructions by selling lumber to himself by virtue of so-called new orders. Indeed, the testimony shows that the respondent did not know that Post was making collections and not remitting, or that he, as agent of respondent, was selling box shooks to himself, or that he was fraudulently using the respondent's money for his individual purposes, until all the damage sued for had been done. It may be that, in one sense, Post is now indebted to the respondent, but

that indebtedness grows out of his fraudulent and dishonest acts. The bond was given to protect respondent against that kind of indebtedness. We are, therefore, of the opinion that the judgment, in so far as it covers charges against the account of C. M. Post Box and Lumber Company, and collections made but not remitted, is correct.

[2] The second item included in the judgment is apparently made up of commissions on old orders which Post had when he entered respondent's employment, and on new orders which he sold to himself. In an action between respondent and Post it might be held that the latter was not entitled to these commissions. But in this case there is a liability only for the dishonest and fraudulent acts of the employee. We do not find in the testimony anything which expressly denies Post's right to commissions on the so-called old orders. They were his and he turned them over to respondent, who was to reap the benefit. The contract provided that Post was entitled to a commission of five per cent of the sales price "of all products sold" by him. Under these facts, we do not see how it can be said that the employee was acting dishonestly or fraudulently in taking commissions on these items. He claimed a right to these moneys and there was at least some basis for the claim. He did not conceal the fact that he was deducting these commissions, but, on the contrary, openly reported them. We are, therefore, of the opinion that there is no liability on the bond for these items.

The third item which is said to form a part of the judgment amounts to $1,911.68 and appears to be for commission on goods sold and shipped direct from the respondent to customers other than the C. M. Post Box and Lumber Company, for which goods Post had made collections and remitted them to respondent. The

testimony does not show any dishonest acts on Post's part in these items. He openly claimed them and as openly collected and reported them. Indeed, we think he was entitled to this commission, for the contract expressly provided that he was to receive five per cent of the selling price of all products sold by him when collections had been made and remitted.

The testimony comes, for the most part, from bookkeepers and expert accountants, and it is somewhat difficult for those of us who are not learned in those professions to follow the witnesses or easily understand their testimony. Our review of the record, however, indicates to us that this item of $1,911.68 was justly earned by Post as a commission and that he was entitled to deduct it from any remittance he might make.

There are some other claims of error which we must dispose of.

[3] As we have heretofore stated, the court received oral testimony to the effect that, immediately after the written contract with Post had been entered into, it was orally agreed that the so-called "old orders" were to be shipped in the name of C. M. Post Box and Lumber Company and that all new orders should be taken and shipped only in the name of respondent. It is claimed that this testimony was inadmissible because it tended to vary the terms of the written contract. We cannot accept this view, because the contract itself provided that the authority given to Post, as manager and sales agent, was always subject to the control and direction of the board of directors of the respondent. Under this provision, it is plain to us that, after the contract had been entered into, those officers had a right to direct the actions of Post, and that such matters would not tend to vary or contradict the written instrument. But, in addition to

that, we are confident that the testimony was merely explanatory of the contract, and the subject-matter arose after that instrument was formally entered into. We are, therefore, of the belief that the testimony was properly received.

[4] It is stoutly contended that the court erred in permitting W. S. Cram, as treasurer of the Siler Mill Company, of Raymond, and R. H. Shaeffer, as president of the Pacific Box Company, of Tacoma, to testify, in substance, that their companies had previously had similar dealings with Post and that, instead of making remittances to them of money he had collected, he had used it for his own private purposes. This testimony was admitted upon the theory that it is competent to prove other like acts in order to show the intent of the party. We do not find it necessary to decide whether this testimony was admissible. At best, it was unimportant. We must come to the conclusion we have reached without considering that testimony. The case was tried by the court without a jury, and, if the testimony was inadmissible, no harm was done, and therefore a reversal on that account cannot be had.

The court erred in including in its judgment the various items going to make up commissions paid to Post. The briefs do not inform us of the aggregate of those items. The case is remanded with instructions to deduct the commission items and enter judgment for the balance, with interest thereon.

TOLMAN, C. J., HOLCOMB, ASKREN, and FULLERTON, JJ., concur.