[No. 21231. Department Two. October 9, 1928.]

THE DEXTER HORTON NATIONAL BANK OF SEATTLE, *Appellant*, v. UNITED STATES FIDELITY & GUARANTY COMPANY, *Respondent*.[1]

*Poe, Falknor, Falknor & Emory,* for appellant.
*Bausman, Oldham & Eggerman,* for respondent.

BEALS, J.—Plaintiff, a national banking corporation, instituted this action against defendant upon a "Bankers' Blanket Forgery and Alteration Policy," whereby defendant, for value, agreed to indemnify plaintiff against direct loss sustained by it, not exceeding the penalty of the bond, arising, *inter alia,* through payment by plaintiff of any check drawn upon it upon which the signature of any endorser shall have been forged, and also against direct loss sustained

[1]Reported in 270 Pac. 799.

through the cashing by plaintiff of any check or draft, drawn upon any bank, which shall bear the forged signature of any depositor of plaintiff as endorser.

The facts which gave rise to this litigation are as follows: Crenshaw & Bloxom, a corporation, was a depositor in plaintiff's bank, and, prior to the cashing of the first of the checks hereinafter referred to, had delivered to plaintiff a resolution of its board of trustees, signed by its president and attested by its secretary, under the corporate seal, as follows:

"RESOLVED: That all checks drawn upon the Dexter Horton National Bank of Seattle, against the account of this corporation in said bank, shall be signed by Max Weinstein or W. M. Newmeyer and countersigned by Max Weinstein, I. M. Buxbaum, or D. S. Mason. The authority hereby conferred shall extend to and include the authority of the said persons above named in the above manner, to draw checks as aforesaid, payable to their own order or to bearer, and the said Dexter Horton National Bank of Seattle is hereby authorized to honor and pay any and all checks so drawn upon it against the account of this corporation, and also to pay all checks, payable to this corporation, as payee and endorsee, when endorsed and presented to it as above set forth."

At or about the same time, signature cards bearing the signatures of the officers referred to in the resolution above quoted were delivered to plaintiff. These cards bore the heading "Crenshaw & Bloxom," and the words "Two signatures required," stamped twice upon the face of each card. These words were also printed on the face of the cards:

"Below please find duly authorized signatures which you will recognize in the payment of funds or the transaction of other business on our account."

One H. N. Howe, who was in the employ of Crenshaw & Bloxom as its cashier, and as such officer had

authority to endorse checks payable to his employer for deposit to its credit, endorsed certain checks payable to Crenshaw & Bloxom as follows: "Crenshaw & Bloxom, H. N. Howe, Cashier"; presented these checks at plaintiff's bank, and from plaintiff's employees received the respective amounts, aggregating $1,989.22, for which the checks were drawn, and converted the money to his own use.

Plaintiff contended that the loss it suffered through the acts of the dishonest employee of its depositor came within the terms of the bond written in its favor by defendant, which liability defendant denied. The trial court held that the facts disclosed by the testimony did not bring plaintiff's claim within the terms of the indemnity bond written by defendant, and entered judgment dismissing the action, from which judgment plaintiff appeals.

█ The sole question to be determined is, do the words endorsed by Howe upon the checks drawn in favor of his employer constitute forgery, within the terms of the bond sued upon. Such bonds are most strictly construed against the surety; *Duke v. National Surety Co.,* 130 Wash. 276, 227 Pac. 2; *Parker Lum. & Box Co. v. Aetna Casualty & Surety Co.,* 140 Wash. 262, 248 Pac. 795; but at the same time the compensated surety has the right to stand upon the condition of his bond, and where the liability sought to be enforced against it does not come within these obligations, the surety cannot be held responsible. *Clarke v. Fidelity & Deposit Co. of Maryland,* 73 Wash. 62, 131 Pac. 468; *Stuht v. Maryland Motor Car Ins. Co.,* 90 Wash. 576, 156 Pac. 557; *Van Vechten v. American Eagle Fire Ins. Co.,* 239 N. Y. 303, 146 N. E. 432.

█ Appellant's liability to its depositor Crenshaw & Bloxom for the error of its employee in paying the checks to Howe upon his endorsement was admitted,

346

and appellant promptly reimbursed its depositor by crediting its account with the amount which it had so paid. It now earnestly contends that Howe's endorsements constituted forgery, within the terms and conditions of the bond; while respondent contends that Howe's endorsement was not a forgery, but simply a false pretense or representation on his part that he had authority to endorse his employer's name and receive the amount of the check so endorsed in cash.

It is true that the technical rules governing a criminal prosecution are not applicable to such a case as this. It is also true that in order to hold the surety upon such a bond as is here sued upon, the claimant need not produce testimony which satisfies the court or jury beyond a reasonable doubt of the truth of the facts upon which his claim is based, and that words such as "embezzlement" or "forgery," when contained in a bond like the one upon which this action is based, shall be deemed to have been used in their general and popular sense rather than with specific reference to some statutory definition. *Mitchell Grain & Supply Co. v. Maryland Casualty Co. of Baltimore,* 108 Kan. 379, 195 Pac. 978, 16 A. L. R. 1488.

The New Standard Dictionary (edition of 1920) contains the following definition of the word "forgery:"

"The act of falsely making or materially altering, with intent to defraud, any writing which, if genuine, might be of legal efficacy or the foundation of a legal liability."

This definition excludes a genuine writing, that is a writing which is just exactly what it purports to be. It may be a false writing in that it either directly or by inference states a lie, but it is at least what on its face it seems. So it is with the words endorsed by Howe upon Crenshaw & Bloxom's checks, these words

inferentially state an untruth, in that they imply that Howe had authority to endorse his employer's name to the checks so endorsed and receive the proceeds thereof; but, while the endorsement thus inferentially contains a false statement of fact and was made for an unlawful purpose, still the writing, while false in the sense that it spoke a lie, was not falsely made, in that it purported to be anything different from what it actually was.

In our opinion, the act of Howe in endorsing the words above quoted upon checks payable to his employer did not constitute forgery, either within any technical definition of the word or its general or popular meaning. Appellant argues that, because this court has held that such words as "cashier" or "president," without words of procuration, following a signature are merely descriptive of the person and do not denote agency, appellant was entitled to assume that the name "Crenshaw & Bloxom" was written by some person who had authority to endorse that name, and that the name "H. N. Howe, Cashier," without any words denoting agency and immediately following the words "Crenshaw & Bloxom," were written by Howe simply to identify the person who cashed the check over the counter of appellant's bank. We are unable to follow appellant's counsel in this argument. Crenshaw & Bloxom was a corporation, its name could not be signed or stamped on any paper save through some agency, no agency other than that of Howe appears on the backs of the checks; as far as appellant's claim is concerned, the situation is the same as though Howe had added the word "by" before his name and the word "its" before the word "cashier," or written other words of similar import. The presence or absence of words of procuration has nothing to do

with the question of whether or not the words written by Howe constituted forgery.

The supreme court of California in the case of *People v. Bendit,* 111 Cal. 274, 43 Pac. 901, an appeal from a conviction of the crime of forgery, states:

"When the crime is charged to be the false making of a writing, there must be the making of a writing which falsely purports to be the writing of another. The falsity must be in the writing itself,—in the manuscript. A false statement of fact in the body of the instrument, or a false assertion of authority to write another's name, or to sign his name as agent, by which a person is deceived and defrauded, is not forgery. There must be a design to pass as the genuine writing of another person that which is not the writing of such other person. The instrument must fraudulently purport to be what it is not. And there was nothing of the kind in the case at bar. There was no pretense that 'Wm. Cluff & Co.' was the genuine signature of that firm. It was written by appellant himself, in the presence of the party who paid the money. He added the initials 'A. B.' to it, and he was understood to be acting as the agent of the firm, and to have written the name 'Cluff & Co.' by himself as such agent. By these acts he may have committed some other crime, but he did not commit forgery."

The supreme court of Nebraska in the case of *Goucher v. State,* 113 Neb. 352, 204 N. W. 967, 41 A. L. R. 227, referring to the crime of forgery, says:

"The genuine making of a false instrument is not generally a forgery, and this is the usual interpretation of the courts, unless otherwise provided in the statutes themselves. The decisions are nearly unanimous that the making of a false instrument is not within a criminal statute directed against the false making of an instrument. *Territory of New Mexico v. Gutierrez,* 13 N. M. 312, 5 L. R. A. (N. S.) 375, note; *De Rose v. People,* 64 Colo. 332, L. R. A. 1918C, 1193. This is not a mere play on words. It is a substantive distinction by which even a knave is protected in prosecutions

under legislative enactments authorizing punishments for different species of fraudulent acts such as forgery, obtaining money by false pretenses, larceny and embezzlement. Statutes like the one under consideration are generally considered to be forgery statutes. There is a distinction between forgery and obtaining property by a false writing. 25 C. J. 658, § 99; *Hoge v. First Nat. Bank*, 18 Ill. App. 501; *State v. Stewart*, 9 N. D. 409, 83 N. W. 869; *Commonwealth v. Sankey*, 22 Pa. 390, 60 Am. Dec. 91; *Hill v. State*, 1 Yerg. (Tenn.) 76, 24 Am. Dec. 441. The essence of forgery is the making of a false writing with the intent that it shall be received as the act of another than the party signing it. 26 C. J. 898, § 5; *Ex parte Geissler*, 196 Fed. 168; *Barron v. State*, 12 Ga. App. 342, 77 S. E. 214; *Commonwealth v. Foster*, 114 Mass. 311, 19 Am. Rep. 353; *Edwards v. State*, 53 Tex. Cr. Rep. 50, 126 Am. St. Rep. 767, 108 S. W. 673. Forgery cannot be committed by the making of a genuine instrument, though the statements made therein are untrue.''

In the case of *Mann v. People*, 15 Hun (N. Y.) 155, 165, Westbrook, J., defines the word "forgery," as follows:

"In answering the question propounded, the ordinary and popular meaning of the word *'forge'* must not be forgotten. When a note or instrument is spoken of as *'forged,'* it is understood to be a counterfeit one, and this understanding is in conformity with the definitions given to the two words by our best lexicographers. (Webster's Dictionary, Worcester's Dictionary, Imperial Dictionary, etc.) Whenever, therefore, the expression 'forged note,' or 'counterfeit note,' is used, we understand the speaker to refer to an instrument by which some one has undertaken to utter and pass, as the genuine and personal act of another, something which he has himself prepared in the similitude and likeness of the other's act, and by such similitude and likeness which he has endeavored to impress upon the spurious instrument to deceive and defraud. In other words, forgery is the attempted imitation of another's personal act, and by means of such imitation

to cheat and defraud; and not the doing of something in the name of another, which does not profess to be the other's personal act, but that of the doer thereof, who claims and insists by and in the act itself, that he is authorized to obligate the individual, whom he is assuming to obligate precisely as he undertakes to do.''

In the case of *Regina v. White,* 2 Car. & K. 404 (61 English Common Law Reports 404), it was held that endorsing a bill of exchange under a false assumption of authority to endorse it per procuration is not forgery, there being no false making.

In volume 12 R. C. L., p. 144, the doctrine is laid down that:

''To constitute forgery there must be the making of a writing which falsely purports to be the writing of another person or to be genuine and authentic. A false statement of fact in the body of the instrument or a false assertion of authority to write another's name, by which a person is deceived and defrauded, is not forgery. To make it such there must be a design to pass as genuine a writing which is not.''

Later, page 145:

''So, if one fraudulently executes and issues an instrument purporting on its face to be executed by him as the agent of a principal therein named, he is not guilty of forgery though he has in fact no authority from such principal to execute the writing. This follows from the cardinal rule that the writing or instrument itself must be a simulation.''

While the foregoing references refer to the crime of forgery, we find no authority which indicates that the popular meaning of the word ''forgery'' differs from its technical meaning, as used in the instances cited. Forgery as a crime often includes certain acts, such as obliterating or destroying an instrument, which are not generally or popularly thought of as coming within the meaning of the word; but in so far as an endorse-

ment on a check is concerned, we believe the technical definition of the word and its popular meaning to be practically identical.

Appellant had received from its depositor complete and specific directions as to the signatures it should recognize in paying money upon writings for the payment of which appellant could charge such depositor or become liable to it if wrongfully paid. Appellant's employee ignored these instructions and paid large sums of money to its depositor's employee upon his endorsement on checks payable to the order of appellant's depositor, which endorsement no wise came within the instructions given appellant by its depositor as to the signatures which should be recognized by appellant.

We are satisfied that Howe's acts in endorsing Crenshaw & Bloxom's checks as above set forth did not constitute forgery, within the obligation of the bond executed in favor of appellant by respondent, and that the testimony does not support appellant's claim that respondent is liable on the cause of action set forth in appellant's complaint.

The judgment of dismissal is affirmed.

FULLERTON, C. J., PARKER, ASKREN, and HOLCOMB, JJ., concur.