[No. 28175-5-I. Division One. January 11, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS C. SODERHOLM, *Appellant*.

364

*John P. Jensen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ivan L. Orton, Deputy,* for respondent.

SCHOLFIELD, J. — Appellant Douglas Soderholm appeals his conviction on one count each of unregistered contracting, RCW 18.27.020, and forgery, RCW 9A.60.020(1)(b). We affirm.

## FACTS

In the spring of 1989, Karen and Wayne Johnston, husband and wife, planned to build a riding arena, barn, manure bunker, and storage building on their property in Fall City, King County, Washington. They hired Soderholm to perform the work. Soderholm told the Johnstons that he was a licensed and bonded contractor, and he provided a general contractor's number on contracts executed with the Johnstons. Soderholm knew the contractor registration number he provided was invalid.

In the beginning of April 1989, the Johnstons accepted Soderholm's bid and signed a series of agreements with him regarding the project. On or about June 12, 1989, Soderholm applied for a residential building permit from King County Building and Land Development (BALD), signing his own name to the application. BALD requirements allowed applicants to either use a contractor or be their own owner/contractor. For property owners building on their own property for their own use, an affidavit regarding contractor registration (owner affidavit) was required for a building permit. For contractors, a contractor license and registration number was required. One of these two alternatives had to be satisfied before a permit would issue.

Soderholm was aware that he could not secure a permit unless he submitted an owner affidavit or valid contractor registration number, and he knew he could not provide the latter. Soderholm thus submitted an owner affidavit and signed Wayne Johnston's name to it rather than his own. Soderholm never asked Mr. or Mrs. Johnston to sign the affidavit, and he was never told by Mr. Johnston that he could sign his (Johnston's) name to the affidavit. Soderholm submitted the affidavit to BALD, which then issued a building permit to him. ·

By July 1989, the project was not completed and Soderholm's workers had stopped showing up regularly at the Johnstons' property. On August 29, 1989, the Johnstons terminated their contract with Soderholm. The Johnstons

were left with an unfinished barn, no workshop, and no manure bunker.

On November 9, 1989, the Washington State Department of Labor and Industries issued Soderholm a noncriminal notice of infraction for performing work at the Johnstons' residence while not registered as a contractor. On October 23, 1990, Soderholm paid the $200 fine pursuant to the infraction.

By complaint dated August 17, 1990, Soderholm was charged with unregistered contracting in violation of RCW 18.27.020 (count 1),[1] and attempted forgery in violation of RCW 9A.60.020(1)(b)[2] and RCW 9A.28.020 (count 2). The prosecutor and legal intern handling the case initially evaluated count 2 as a forgery, but decided to treat it as an "expedited" felony. With a typical "expedited" felony, the prosecutor files the felony in district court and, in return for the defendant's expedited plea to an attempted "class C" felony (a gross misdemeanor), the State agrees to make a specific sentencing recommendation and not pursue the felony charges. Instead, an amended complaint is filed at district court lowering the charge to a gross misdemeanor.

In the present case, however, the prosecutor filed attempted forgery charges in district court because she mistakenly believed that a charge of forgery, a felony, could not be filed in district

---

[1] In pertinent part, RCW 18.27.020 provides as follows:

"(1) Every contractor shall register with the department.

"(2) It is a misdemeanor for any contractor having knowledge of the registration requirements of this chapter to:

"(a) Advertise, offer to do work, submit a bid, or perform any work as a contractor without being registered as required by this chapter;

"(b) Advertise, offer to do work, submit a bid, or perform any work as a contractor when the contractor's registration is suspended; . . .".

[2] In pertinent part, RCW 9A.60.020 defines forgery as follows:

"(1) A person is guilty of forgery if, with intent to injure or defraud:

" . . . .

"(b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged." Although forgery is a class C felony, attempted forgery is a gross misdemeanor. See RCW 9A.28.020(3)(d); RCW 9A.60.020(2).

court. The case was set for a pretrial conference on November 21, 1990. The prosecutor attempted to discuss a plea with Soderholm's counsel, John Jensen, on at least two occasions, but Jensen was not interested because he believed Soderholm had several valid defenses. The prosecutor wrote Jensen a memo on November 19, 1990, to clarify her position.[3] This memo was mailed to Jensen and also handed to him by the prosecutor on November 21 at the pretrial conference.

At the pretrial conference, the prosecutor stated on the record her intention to amend the charge to forgery if Soderholm was not willing to plead guilty to the charge of attempted forgery. The trial judge asked Jensen if he understood what expedited felonies were, and Jensen indicated that he did. The trial judge explained that the "expedited felony" was a normal procedure in King County. Jensen stated that his preference was to go to trial, so the judge assigned a briefing schedule for pretrial motions.

On November 21, 1990, the prosecutor wrote Jensen to again notify him that she would be moving to dismiss the case in district court and that it would be refiled in superior court. However, Jensen did not receive notice of the actual hearing date. On November 28, 1990, the prosecutor obtained a dismissal of the action without prejudice at district court and immediately refiled the case in superior court. An information was filed in superior court which charged Soderholm with forgery and unregistered contracting.

At a pretrial motion hearing, Soderholm's motion to dismiss the unregistered contracting count on the basis of collateral estoppel and double jeopardy was denied. Soderholm's subsequent motion to dismiss the forgery count due

---

[3]In part, the memo provided, " 'If I do not hear from you [regarding the plea offer] before Wed. [the pretrial conference], I plan to amend the complaint to forgery and transfer the case to Superior Court.' " Clerk's Papers, at 100. The memo also stated that " '[s]hould Mr. Soderholm plead guilty to the existing charges and agree to pay $4207.74 in restitution to the Johnstons, our office will recommend 5 days[.] jail for the attempted forgery and a $200 fine for the unregistered contracting. This would be a two year suspended sentence.' " Clerk's Papers, at 25.

to insufficient evidence was also denied. Soderholm was later found guilty by a jury on both counts, and was ordered to pay restitution to the Johnstons in the amount of $2,000. This appeal followed.

COLLATERAL ESTOPPEL AND DOUBLE JEOPARDY

Soderholm contends that, despite his payment of the $200 civil infraction fine for performing contracting work without being registered, he was charged with and convicted of a misdemeanor based on the same incident. He claims this violates the doctrine of collateral estoppel and double jeopardy. He also argues that under the "same evidence" test, he can only be penalized once because his conduct amounted to both a civil infraction and a misdemeanor.

Collateral estoppel promotes the policy of ending disputes by preventing the relitigation of an issue or determinative fact after the party estopped has had a full and fair opportunity to present a case. *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987). In order for the doctrine to apply, the following four questions must be answered in the affirmative:

> (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Will the application of the doctrine not work an injustice on the party against whom the doctrine is to be applied?

(Citations omitted.) *McDaniels*, at 303 (quoting *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983) (quoting *Seattle-First Nat'l Bank v. Cannon*, 26 Wn. App. 922, 927, 615 P.2d 1316 (1980))).

■■ There is no issue of collateral estoppel or res judicata in this case because there was no prior proceeding pursued to a final result. In pertinent part, RCW 18.27.270 states:

> (1) A contractor who is issued a notice of infraction shall respond within twenty days of the date of issuance of the notice of infraction.

. . . .
> (4) If any contractor issued a notice of infraction fails to respond within the prescribed response period, *the contractor shall be guilty of a misdemeanor and prosecuted in the county where the infraction occurred.*

(Italics ours.) Under this provision, the issuance of a notice of infraction is simply the initial step in the enforcement process and can lead to misdemeanor charges if the contractor fails to timely respond to the notice. This is in essence what occurred here.[4] No separate action occurred as a result of the issuance of the infraction notice.

Soderholm also contends that the wording of the notice of infraction and the statutory scheme of RCW 18.27 lead one to believe that payment of the fine will conclude any further action. While the notice does provide that "[p]ayment [of the fine] will close the case", Soderholm's payment of the fine failed to terminate the action because it was not timely. Indeed, an untimely response to the notice of infraction serves as the basis for misdemeanor charges under RCW 18.27.270(4).

There is no double jeopardy issue in this case because, as previously stated, there was no prior proceeding pursued to a final result. For the same reason, the "same evidence" test of *State v. Roybal*, 82 Wn.2d 577, 512 P.2d 718 (1973) and *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932) is not applicable.

PROSECUTORIAL VINDICTIVENESS

Soderholm claims that this case should have been dismissed prior to trial on grounds of "prosecutorial vindictiveness". He claims that such vindictiveness is evidenced by the prosecutor's dismissing the charges in district court and, without notice to him, refiling the case in superior court and

---

[4] The State elected to prosecute Soderholm for unregistered contracting under RCW 18.27.020 instead of prosecuting him for failing to timely respond to the notice of infraction under RCW 18.27.270(4). That the State could elect between these two offenses is of no significance to our analysis. Both provisions define misdemeanor offenses, and the evidence indicates that Soderholm's conduct violated both provisions.

elevating the attempted forgery charge to forgery. He claims that this was done in retaliation for his failure to accept a plea bargain.

 Prosecutorial vindictiveness has been defined as the " 'intentional filing of a more serious crime in retaliation for a defendant's lawful exercise of a procedural right.' " *State v. Bockman*, 37 Wn. App. 474, 488, 682 P.2d 925 (quoting *State v. McKenzie*, 31 Wn. App. 450, 452, 642 P.2d 760, *review denied*, 96 Wn.2d 1024 (1981)), *review denied*, 102 Wn.2d 1002 (1984). However, the filing of a more serious charge following a defendant's exercise of a constitutional right does not violate due process of law unless the prosecutor acts with the intent of retaliating against the defendant. *State v. Lass*, 55 Wn. App. 300, 306, 777 P.2d 539 (1989). More than an appearance of vindictiveness is required to establish a due process violation. *Lass*, at 306; *Bockman*, at 488.

To support his vindictiveness argument, Soderholm relies on *Blackledge v. Perry*, 417 U.S. 21, 40 L. Ed. 2d 628, 94 S. Ct. 2098 (1974), a case that involved a claim of prosecutorial vindictiveness in the posttrial setting. The defendant in *Blackledge* appealed his misdemeanor conviction and the prosecutor then substituted a felony charge based on the same conduct. *Blackledge*, at 22-23. The Court ruled that the State's conduct offended due process, because a person convicted of an offense was entitled to pursue a statutory right of appeal without fear that the State would retaliate by filing a more serious charge. *Blackledge*, at 28. The Court stated that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial and appeal, but only by those that pose a realistic likelihood of 'vindictiveness.' " *Blackledge*, 417 U.S. at 27.

In cases following *Blackledge*, the Court has been reluctant to view conduct taken at the pretrial plea bargaining stage as posing a realistic likelihood of vindictiveness.[5] Wash-

---

[5] *See Bordenkircher v. Hayes*, 434 U.S. 357, 358, 365, 54 L. Ed. 2d 604, 98 S. Ct. 663 (no due process violation where prosecutor carried out threat made during plea negotiations to reindict defendant on more serious charges if he refused to plead guilty to original charge), *reh'g denied*, 435 U.S. 918 (1978); *United States*

ington case law is in accord and suggests that actual vindictiveness is required to invalidate the prosecutor's adversarial decisions made prior to trial.[6]

There is no evidence in this case that the prosecutor, in filing a second information with the elevated forgery charge, was intentionally retaliating against Soderholm. The filing in superior court was done pursuant to an "expedited felony" procedure common in King County. The evidence indicates that the prosecutor changed the attempted forgery count to forgery because the deputy prosecutor mistakenly believed the felony charge could not be filed in district court. The charging decision was modified as a result of the "give and take" of plea bargaining and was justified.

■ Soderholm also claims that the prosecutor's failure to provide him notice of the State's motion to dismiss the district court action violated his right to appear and argue that the dismissal should be with prejudice. This claim is without merit. The prosecutor notified Soderholm's counsel on at least three occasions that she would be seeking dismissal of the district court charges, and counsel knew of the prosecutor's intent to refile in superior court. The expedited plea process was explained to counsel on the record in the Novem-

---

v. *Goodwin*, 457 U.S. 368, 370, 384, 73 L. Ed. 2d 74, 102 S. Ct. 2485 (1982) (Court declined to presume vindictiveness where the defendant, charged with misdemeanor offenses, requested a jury trial and was subsequently indicted and convicted on a felony charge). As the Court stated in *Bordenkircher*:

> To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

(Citations omitted.) *Bordenkircher*, 434 U.S. at 363.

[6]*See State v. McDowell*, 102 Wn.2d 341, 342-47, 685 P.2d 595 (1984) (no presumption of prosecutorial vindictiveness where prosecutor filed more serious charge after juvenile refused to enter into diversionary program on complaint alleging less serious charge); *State v. Serr*, 35 Wn. App. 5, 11, 664 P.2d 1301 (mere fact that defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant presumption that subsequent changes in charging decision are unwarranted), *review denied*, 100 Wn.2d 1024 (1983).

ber 21, 1989, hearing. Soderholm's counsel made no statement that he intended to contest the dismissal at that time. While he was not notified of the date dismissal would be sought, the court rules do not indicate that notice was required. Under CrRLJ 8.3(a), "[t]he court may, in its discretion, upon motion of the prosecuting authority setting forth the reasons therefor, dismiss a complaint or citation and notice." This provision contains no notice requirement.[7]

## SUFFICIENCY OF EVIDENCE

Soderholm claims that the evidence does not support his conviction for forgery. He claims that he in good faith believed that he was authorized, as an agent for the Johnstons, to sign the owner affidavit form he used to obtain the construction permit. He further contends that the State failed to prove that he had the intent to defraud anyone, and thus failed to prove an essential element of the forgery charge.

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *Salinas*, at 201. A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Salinas*, at 201.

The jury in this case was provided with the following forgery instruction:

> To convict the defendant Douglas C. Soderholm of the crime of forgery, as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
> 1) That on or about the 14th day of July, 1989, the defendant possessed, or offered, or disposed of, or put off as true, a

---

[7]It is reasonable to presume that if notice were required for dismissal under CrRLJ 8.3(a), that requirement would be stated. Under CrRLJ 8.3(b), which governs dismissal due to government misconduct, there is an explicit provision for notice and a hearing.

written instrument which had been falsely made, or completed;

2) That the defendant knew that the instrument had been falsely made, or completed;

3) That the defendant acted with intent to injure or defraud, and;

4) That the acts occurred in King County Washington.

Instruction 6, in part. This instruction is patterned after WPIC 130.03 and states the elements of forgery as listed in RCW 9A.60.020(1)(b). The jury was also provided with definitions of "falsely make"[8] and "falsely complete".[9]

In claiming that he had authority to sign Mr. Johnston's name, Soderholm relies on the testimony of Mrs. Johnston and of himself. Mrs. Johnston testified that she recalled discussing with Soderholm the matter of permits, and that she "specifically asked him if he was going to handle all of that, because I knew nothing about it and because my husband was going to be gone so much." She agreed that she had expected Soderholm to act as her agent in buying the necessary materials for the project and in obtaining a building permit. Soderholm testified that he felt he was authorized to sign Mr. Johnston's name in order to get the permit.

Construing the evidence in a light most favorable to the State, a rational trier of fact could have found that Soderholm acted without authority in signing Mr. Johnston's name to the owner affidavit. Neither Mr. nor Mrs. Johnston specifically gave Soderholm authority to sign Mr. Johnston's name, nor did Soderholm request such authority. Such authority cannot be implied because Soderholm, in signing the affidavit, falsely represented that the property owner would be

---

[8]Instruction 8 (which is identical to WPIC 130.11), reads as follows:

"Falsely make means to make or draw a complete or incomplete written instrument which purports to be authentic, but which is not authentic either because the ostensible maker is fictitious or because, if real, the maker did not authorize the making or drawing thereof."

[9]Instruction 9 corresponds to WPIC 130.12 and reads:

"Falsely complete means to transform an incomplete written instrument into a complete one by adding or inserting matter, without the authority of anyone entitled to grant it."

performing all the work on the property.[10] There is no evidence that either Mr. or Mrs. Johnston authorized Soderholm to make a false representation on Mr. Johnston's behalf.

Soderholm next claims that, in submitting the owner affidavit, there was no evidence that he acted with an intent to defraud. We disagree. A rational trier of fact could have found that Soderholm signed Mr. Johnston's name to the owner affidavit in order to conceal from the Johnstons that he was not a registered contractor.[11] Furthermore, Soderholm's act was clearly an effort to defraud the County by avoiding contractor registration requirements.

JURY INSTRUCTIONS

Soderholm contends the trial court erred in refusing to provide the jury with two instructions he proposed concerning the law of agency. The first instruction was derived from *State v. Conklin*, 79 Wn.2d 805, 808, 489 P.2d 1130 (1971), and stated that a defendant cannot be convicted of forgery unless it is proved beyond a reasonable doubt that he lacked authority to sign an instrument. The second instruction stated that it is not forgery for one to sign the name of another openly, under a claim of being that person's agent, even where the defendant has no basis for claiming agency.[12]

Jury instructions are sufficient if they permit each party to argue his theory of the case, are not misleading, and

---

[10]The affidavit regarding contractor registration, or owner affidavit, contained a provision stating "[t]hat all construction work done pursuant to the proposed building permit for the property described above will be done by the owner or owners of the property." Exhibit 17.

[11]Soderholm's only other options in securing a permit would have been to provide a valid contractor registration number — which he could not do — or have the Johnstons complete the owner affidavit themselves. Had Soderholm had the Johnstons complete the affidavit, the Johnstons would have had to represent that they, as owners, would perform all work on their property. This undoubtedly would have raised questions as to why Soderholm did not simply apply for the permit as a contractor and provide a contractor registration number.

[12]As authority for this instruction, Soderholm cited *State v. Mark*, 94 Wn.2d 520, 523-24, 618 P.2d 73 (1980) and *Dexter Horton Nat'l Bank v. United States Fid. & Guar. Co.*, 149 Wash. 343, 270 P. 799 (1928).

when read as a whole, properly inform the trier of fact of the applicable law. *State v. Rice,* 110 Wn.2d 577, 603, 757 P.2d 889 (1988), *cert. denied,* 491 U.S. 910 (1989). A trial court has discretion to decide how instructions are worded. *State v. Ng,* 110 Wn.2d 32, 41, 750 P.2d 632 (1988). The instructions must be read as a whole and a requested instruction need not be given if the subject matter is adequately covered elsewhere in the instructions. *Ng,* at 41. Also, a specific instruction need not be given when a more general instruction adequately explains the law and enables the parties to argue their theory of the case. *Rice,* at 603.

The first instruction proposed by Soderholm represents a correct statement of the law. *See Conklin,* at 808. Nonetheless, it was not error for the court to refuse it because the subject was adequately covered by the instructions provided. Instruction 6 informed the jury that it had to find all elements of the crime proved beyond a reasonable doubt. Forgery includes the element that the instrument be "falsely made", and the jury was informed that "falsely make" means, in part, that "the maker did not authorize the making or drawing" of the instrument. Instruction 8. Read as a whole, the instructions informed the jury that an absence of authority had to be proved beyond a reasonable doubt.

Soderholm's second proposed instruction is a misstatement of the law and is not supported by the authorities cited. A mere claim of agency is not an absolute defense to forgery. At most, it is simply evidence a jury may consider in determining whether the "falsely make" or "falsely complete" elements of forgery are met. *See* RCW 9A.60.010(4), (5), (7); RCW 9A.60.020(1)(b). Further, both *State v. Mark,* 94 Wn.2d 520, 618 P.2d 73 (1980) and *Dexter Horton Nat'l Bank v. United States Fid. & Guar. Co.,* 149 Wash. 343, 270 P. 799 (1928) involved individuals who signed *their own* names to instruments which, while wrongful, were on their face exactly what they purported to be.[13] In this case, Soder-

---

[13]In *Mark,* the court held that a pharmacist's act of printing physicians' names on a blank prescription form, and then signing the form in his own name,

holm executed the owner affidavit by signing the name of Mr. Johnston, and in no fashion indicated any agency status.

RESTITUTION

Soderholm contends that the trial court erred in awarding the Johnstons $2,000 in restitution because no competent evidence was presented at the restitution hearing to support the award.

■ The authority to impose restitution is not an inherent power of the court but is derived from statutes. *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). When a particular type of restitution is authorized by statute, imposition of restitution is generally within the sound discretion of the court and will not be disturbed on appeal absent an abuse of discretion. *Davison*, at 919. In the case at hand, the restitution award was based on Soderholm's misdemeanor conviction. An award of restitution for a misdemeanor offense is authorized under RCW 9.92.060(2) and RCW 9.95.210(2), both of which allow the court to require the defendant "to make restitution to any person or persons who may have suffered loss or damage by reason of the commission of the crime in question . . .".

The Johnstons claimed restitution for amounts allegedly overpaid to Soderholm for the workshop and arena. They outlined the basis for their claim in a restitution memorandum containing a breakdown of the amounts allegedly owing.[14] Soderholm was advanced $4,807.08 for the workshop although he never started the project. From this amount, the

---

did not constitute forgery because there was no representation that the physicians had signed the forms. *Mark*, at 522-24. Similarly, in *Dexter Horton*, the court found no forgery where a corporation's cashier, without authorization, endorsed checks in the name of his corporate employer and then signed them himself. *Dexter Horton*, at 344-45, 351. While the cashier's writing on its face stated a lie (*i.e.*, that he had authority to endorse his employer's name and receive the check proceeds), it was otherwise exactly what it purported to be, and therefore was not a forgery. *See Dexter Horton*, at 346-47.

[14]The figures in the memo are based on several canceled checks that were admitted at trial. However, these exhibits are not part of the appellate record.

Johnstons deducted $1,212.90 for usable materials Soder-holm had purchased for the project and left on the site.[15] The total requested for the workshop was therefore $3,594.18. On the arena, the Johnstons claimed restitution of $580: $80 for a mathematical error by Soderholm in calculating the billing, and $500 to cover the cost of having light poles installed. Soderholm did not dispute this figure. The total restitution requested was $4,174.18.

Soderholm claimed that the restitution requested by the Johnstons should be offset by several extra costs he incurred. In his affidavit, he argued that the Johnstons were entitled to only $3,854.06 in restitution, but that he was entitled to offset this amount with a $3,741.25 credit, for total restitution of $112.81.

The trial court determined that restitution should be set in the amount of $2,000. From the amount awarded, it is clear that Soderholm received a partial credit for his alleged extras, and we find no abuse of discretion. Proof of loss for imposing restitution requires evidence sufficient to afford a reasonable basis for estimating a loss, *see State v. Raleigh*, 50 Wn. App. 248, 252, 748 P.2d 267, *review denied*, 110 Wn.2d 1017 (1988), and the State provided such evidence here.

Judgment affirmed.

PEKELIS, A.C.J., and KENNEDY, J., concur.

---

[15]The amount of this credit was supported by Mr. Johnston's affidavit.